**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| Mark Gonzalez, individually and on behalf of all others similarly situated, | x : : |
| Plaintiff, | : Case No. : |
| v. | : : |
| | : **CLASS ACTION COMPLAINT** |
| Vanilla Chip LLC, | : |
| | : **JURY TRIAL DEMANDED** |
| Defendant. | : : |
| | : |
| | x |

Plaintiff Mark Gonzalez ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, brings this Class Action Complaint against Defendant Vanilla Chip LLC ("Defendant") and alleges upon personal knowledge as to himself and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant's deceptive marketing and sale of a line of nutritional supplement products sold under the "TruHeight" brand and promoted as helping children to grow.

2. Defendant markets the Products to parents of children as young as five years old, representing that the Products help children grow taller. Specifically, the Products all state that they are for ages "5+" and use the terms "Supports Growth" and "Helps Kids Grow" or "Supports Bone Growth and Development."

3. These representations are false, misleading, and unsubstantiated.

1

4.    The clinical study which Defendant links on its website does not demonstrate that the Products increase children's growth and, when properly examined, demonstrates that the Products provide no growth benefit to the very age group for which they are marketed.

5.    In that study, children under the age of 10 who consumed no Product at all experienced growth equal to or greater than children who consumed Defendant's supplement.

6.    Defendant omits these material facts from its advertising.

7.    Plaintiff and the Class paid a price premium for the Products based on Defendant's Misrepresentations and omissions concerning the quality and characteristics of the Products and were injured as a result.

## FACTUAL BACKGROUND

8.    Defendant Vanilla Chip LLC manufactures, markets, advertises, and sells nutritional supplements under the TruHeight brand throughout the United States, including New York.

9.    Defendant's TruHeight product line includes powders, capsules and gummies marketed to increase growth and height in children.  This includes the TruHeight Kids and Teens Growth Protein Shake, TruHeight Growth Gummies and TruHeight Growth Capsules (the "Products").

10.    Defendant markets the Products through its website, Amazon listings, product packaging, social-media advertising, and influencer endorsements.

11.    Defendant expressly represents that the Products are appropriate and effective for children ages five and up.

12.    Defendant uniformly represents that the Products increase growth, accelerate height velocity, and help children reach a taller adult height.  It does so through the substantially similar

labeling claims that each Product is for ages "5+" and uses the terms "Supports Growth" and "Helps Kids Grow" or "Supports Bone Growth and Development."

13.  Images showing these statements on the product labels appear below:







14.     To substantiate its growth claims, Defendant relies on a six-month clinical study evaluating changes in children's height and Height Standard Deviation Score ("Height SDS").

15.     Height SDS is a statistical measure indicating how a child's height compares to age- and sex-adjusted population norms and is commonly used to assess whether a child is growing faster than expected.

16. A meaningful increase in Height SDS would be required to substantiate Defendant's claims that the Products accelerate growth.

17. The study was sponsored and funded by Defendant and enrolled a small cohort of children aged four to seventeen, an unusually broad age range spanning multiple developmental stages.

18. Defendant markets the Products specifically to children aged five to ten, yet the study was not designed, powered, or controlled to evaluate efficacy in that age group.

19. When the study's results are stratified by age, children aged ten and under who consumed the Product experienced no statistically significant increase in Height SDS.

20. Children in the same age group in the control group, who consumed no Product and maintained their usual diet, experienced a greater increase in Height SDS.

21. Thus, in the precise age range for which the Products are marketed, the Product conferred no growth benefit and underperformed relative to no supplementation.

22. In other words, for children under ten—the precise population to whom Defendant markets the Products as suitable and effective—the Product performed worse than no supplementation.

23. The study therefore does not merely fail to substantiate Defendant's growth claims for younger children; it associated the Product with inferior growth outcomes relative to ordinary diet alone in that age group.

24. Defendant does not disclose anywhere in its marketing that children under ten in the control group outperformed children under ten who consumed the Product.

25.     A reasonable consumer would consider it highly material that, in Defendant's own study, the Products were associated with worse growth outcomes than no Product at all for younger children.

26.     By omitting this fact while simultaneously marketing the Products for children ages five and up, Defendant created the misleading impression that the Products are beneficial for younger children, when Defendant's own data show the opposite.

27.     The affirmative statements and omissions detailed in this Complaint are referred to herein collectively as the Misrepresentations.

## THE CLINICAL STUDY

28.     The clinical study referenced on Defendant's website is a six-month randomized controlled pilot study published in Clinical Nutrition Open Science in December 2024, titled "A six-month randomized controlled pilot study evaluating the effects of an oral nutrition supplement on children's growth patterns."

29.     The study was sponsored and funded by TruHeight (Vanilla Chip LLC), and the copyright to the published study is held by "Vanilla Chip LLC dba TruHeight Vitamins."

30.     The study was open-label and lacked a placebo control. Participants in the treatment group knew they were consuming the Product, while participants in the control group simply maintained their usual diet. This design introduces significant expectation and reporting bias.

31.     Despite these overwhelmingly favorable conditions, the study's own data show that the mean change in Height SDS for the treatment group was +0.09 (p=0.0028) while the control group experienced a mean change in Height SDS of +0.10 (p=0.058). In other words, the control group—which consumed no Product at all—experienced a numerically greater increase in Height SDS than the treatment group.

32.    When the results are stratified by age, children ten years old and younger in the treatment group experienced a Height SDS change of +0.07 (p=0.1372, not statistically significant), while children ten years old and younger in the control group experienced a Height SDS change of +0.17 (p=0.1231)—more than double the treatment group's increase.

33.    Incredibly, the control group children under the age of ten grew more in raw centimeters (3.33 cm versus 3.14 cm) than children who consumed the Product.

34.    This means that for the precise age group to which Defendant markets the Products—children ages five to ten—the Product was associated with less growth than no supplementation at all.

35.    Defendant's study further found that changes in Collagen X—the biomarker Defendant now relies upon in its revised marketing—were not statistically significant in either the treatment group (p=0.3263) or the control group (p=0.4492).

### THE "OTHER RELEVANT STUDIES" CITED ON DEFENDANT'S WEBSITE

36.    In addition to the clinical study described above, Defendant's website at truheightvitamins.com/pages/clinical-study displays a section titled "Other Relevant Studies," which purports to provide scientific support for the Products' growth claims. None of the six studies listed in that section was conducted on any TruHeight product or any substantially similar supplement, and none supports the conclusion that TruHeight causes or accelerates height growth in healthy, well-nourished children.

37.    The first cited study is a 2020 Lancet analysis of height trajectories among school-aged children across 200 countries. That study is a population-level epidemiological analysis of national nutritional environments and public health infrastructure in 65 million children across 35

years. It says nothing about the effect of individual supplementation on height in already well-nourished children and does not support Defendant's product claims.

38.    The second cited study is a 2014 American Academy of Pediatrics clinical report on optimizing bone health in children and adolescents. That report reviews calcium and vitamin D requirements and explicitly recommends against routine calcium supplementation in healthy children and adolescents, preferring increased dietary intake instead. The study Defendant cites to imply that its calcium- and vitamin D-containing Products support children's growth in fact counsels against the type of routine supplementation Defendant sells.

39.    The third cited source is a Scientific American article reporting on research from Tufts University, which explains that 60–80% of height is determined by genetics, with the remaining environmental component attributable largely to nutrition. Critically, the same source states that in developed countries such as the United States, nutritional conditions have already largely maximized genetic height potential, which is why average heights in the U.S. have plateaued. This source affirmatively undermines Defendant's claims: it indicates that for the typical American child who is the Products' target market, supplementation would not meaningfully affect height.

40.    The fourth cited source is a Mayo Clinic patient-education webpage on calcium and bone health. It is not a clinical study. It explains that children who do not get sufficient calcium may not reach their full adult height—a proposition applicable to calcium-deficient populations, not to the healthy, typically nourished children who constitute Defendant's target market. The source does not support the proposition that supplementing calcium beyond sufficiency will increase height in well-nourished children.

9

41.    The fifth cited source concerns research by Professor Barry Bogin of Loughborough University on Maya children in Guatemala, finding that chronic stress elevates cortisol and suppresses growth hormone. Professor Bogin's research attributed height gains observed in Maya children who migrated to the United States to improved social safety, reduced fear, and access to resources—not to any supplement. This source does not support Defendant's product claims and is cited only to set up an inferential chain leading to the sixth study.

42.    The sixth cited study is a 2012 randomized controlled trial published on PubMed evaluating ashwagandha root extract in 64 stressed adults. The study found that ashwagandha reduced self-reported stress and cortisol levels in adult participants with chronic stress. It was not conducted in children, did not evaluate height or growth as an outcome, and made no claims about growth hormone. Defendant's implicit inferential chain—that stress suppresses growth in children, that ashwagandha reduces stress in stressed adults, and therefore that ashwagandha in TruHeight will increase children's height—is not supported by this or any cited study. No study in Defendant's "Other Relevant Studies" section bridges these inferential gaps.

43.    Taken together, Defendant's "Other Relevant Studies" constitute a classic case of implied scientific support: each source establishes a genuine but general scientific proposition, and Defendant asks consumers to chain those propositions together to reach a conclusion that no cited study ever reaches. Defendant's use of these studies to imply scientific substantiation for its growth claims is misleading.

## DEFENDANT'S KNOWLEDGE AND POST-SCRUTINY CONDUCT

44.    Defendant had actual knowledge that its growth claims are false, misleading and unsupported.

10

45.     Defendant sponsored, funded, and controlled the clinical study on which its marketing claims relied. Defendant therefore had direct access to all of the study data, including the data showing that children aged ten and under who consumed the Product experienced inferior growth outcomes compared to the control group.

46.     Despite possessing this data, Defendant continued to market the Products to parents of children ages five and up, knowing that the study showed no associated growth for children in that age group.

47.     In a November 2023 interview with NutraIngredients, Defendant's co-founder Justin Rapoport stated that the study showed "32.63% more growth in the treatment group than control group.[1]"

48.     Consumer watchdog organization Truth in Advertising, Inc. ("TINA.org") publicly flagged Defendant's growth claims as misleading.[2] Among other things, TINA.org noted that the clinical study cited by Defendant found "a lack of significant improvement in the static parameters of growth (body length, body mass, BMI)."

49.     Reporting in 2024 indicated that the Better Business Bureau had received thirty-six consumer complaints against Vanilla Chip LLC and has assigned the company a "D" rating.[3] Those complaints no longer appear to be available on the Better Business Bureau website.

50.     At the time Plaintiff purchased the Product and throughout the Class Period, Defendant prominently displayed on its website and product marketing the claim that "[i]n a clinical study kids who took TruHeight grew 32.63% more than those who didn't."

51.     This claim on the Product purchased by Plaintiff is shown below:

---

[1] https://www.nutraingredients.com/Article/2023/11/20/TruHeight-talks-supplements-for-height-growth/
[2] https://truthinadvertising.org/articles/truheight/
[3] https://www.yahoo.com/lifestyle/supplement-brand-truheight-suggests-it-can-help-kids-grow-taller-some-pediatricians-are-skeptical-100007126.html



52.     On or about late 2025 or early 2026, Defendant removed the "32.63% more growth"

claim from its website located at www.truheightvitamins.com/products/truheight-growth-protein-

shake.

53.    In place of the "32.63% more growth" claim, Defendant substituted a new claim that "Children who took TruHeight® experienced a remarkable 43.91% higher level of Collagen X, which is shown to support growth plate activity and healthy bone development."

54.    This substitution is itself misleading. Collagen X is a surrogate biomarker, not a direct measure of height or growth. The study's own data show that the change in Collagen X concentration was not statistically significant in either the treatment or control group. The 43.91% figure represents a non-significant difference in a secondary endpoint that the study was not powered to detect.

55.    Defendant's removal of the "32.63% more growth" claim following public scrutiny of its marketing practices, and its replacement with a different but equally misleading metric, demonstrates Defendant's awareness that its growth claims are false and unsupportable, and evidences consciousness of the wrongful nature of its conduct.

56.    Despite the removal of the "32.63%" claim, Defendant continues to market the Products with the claims that they are for ages "5+" and either "Supports Growth" and "Helps Kids Grow" or "Supports Bone Growth and Development."

## JURISDICTION AND VENUE

57.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that (1) this is a class action involving more than 100 class members; (2) at least one member of the Class is a citizen of a state different from Defendant; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

58.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

13

59.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Class's claims occurred in this district.

## PARTIES

60.     Plaintiff Mark Gonzalez is a citizen and resident of Warwick, New York. On several occasions, including in November 2025, Plaintiff purchased TruHeight Growth Protein Shake through Amazon.com while residing in New York.  Plaintiff purchased the Product for use by his minor child and relied on Defendant's representation that the Product "Supports Growth" including for children as young as 5 years old.  Plaintiff reasonably interpreted that representation to mean that the Product was designed to help his child grow and that Defendant possessed substantiation for the claim that consumption of the Product was actually associated with growth in children.   Plaintiff paid a price premium for the Product based on Defendant's Misrepresentations concerning the quality and characteristics of the Products, including affirmative statements which were visible in photographs included in the Amazon.com listing.

61.     Defendant Vanilla Chip LLC is a limited liability company organized and existing under the laws of the State of Nevada with a principal place of business in Las Vegas, Nevada.

62.     Vanilla Chip LLC is the owner, controller, and brand manager of the TruHeight brand and is engaged in the business of formulating, marketing, advertising, distributing, and selling the Products throughout the United States, including within the State of New York.

## CLASS ALLEGATIONS

63.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling

practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

64. The Class is defined as all consumers who purchased the Products in the United States during the Class Period.

65. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

66. The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

67. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

68. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New York Subclass who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

69. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

   b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful

15

business practices with respect to the advertising, marketing, and sale of its Products;

      c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

      d.   Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

      e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

70.    Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

71.    Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

72.    Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

16

73. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

1. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

2. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

3. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

4. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

5. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

6. This class action will assure uniformity of decisions among Class Members;

7. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

8. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

9. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

74. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and the New York Subclass)**

75. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

76. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

77. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class Members seek monetary damages against Defendant.

78. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

79. Defendant engaged in consumer-oriented conduct by marketing, advertising, labeling, and selling the Products to parents and caregivers throughout New York, including through Amazon, Defendant's website, and national advertising campaigns.

80.    Defendant represented, expressly and impliedly, that the Products each work for ages "5+" and either "Supports Growth," "Helps Kids Grow" or "Supports Bone Growth and Development."

81.    Defendant's Misrepresentations are false and misleading because, in reality, there is no legitimate evidence to support the claim that the Products actually help children grow.  In fact, the study relied upon by Defendant affirmatively supports the conclusion that the Products do not help children grow.

82.    Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

83.    Plaintiff and the Class Members have been injured inasmuch as they purchased Products that were mislabeled.  Plaintiff and the Class Members paid a premium based on the Misrepresentations, which were false.  Accordingly, Plaintiff and the Class Members received less than what they bargained and paid for.

84.    Defendant's advertising and Products' packaging and labeling induced Plaintiff and the Class Members to buy Defendant's Products.

85.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class Members have been damaged thereby.

86.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, and compensatory damages,

19

restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass)**

87.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

88.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

89.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

90.    Defendant's labeling and advertisements contain the untrue and materially misleading Misrepresentations.

91.    Defendant's Misrepresentations are false and misleading because, in reality, there is no legitimate evidence to support the claim that the Products actually help children grow.  In fact, the study relied upon by Defendant affirmatively supports the conclusion that the Products do not help children grow.

92.    Plaintiff and the Class Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled. Accordingly, Plaintiff and the Class Members received less than what they bargained and paid for.

93.    Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the Class Members to buy Defendant's Products.

94.    Defendant made its untrue and/or misleading Misrepresentations willfully, wantonly, and with reckless disregard for the truth.

95.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

96.    Defendant made the Misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

97.    Defendant's material Misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

98.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**FRAUD**
**(On Behalf of Plaintiff and the Class)**

99.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

100.    Defendant made material misrepresentations of fact to Plaintiff and the Class, including that the Products each work for ages "5+" and either "Supports Growth," "Helps Kids Grow" or "Supports Bone Growth and Development."

101.    All members of the Class were presented with these substantially equivalent representations.

102.    These representations were false. Defendant's own clinical study shows no statistically significant between-group difference in height growth, and children aged ten and under who took the Product grew less than children who took nothing at all.

103.    Defendant knew its representations were false at the time they were made. Defendant funded and controlled the clinical study and had direct access to all study data. Defendant therefore knew that: (a) the study found no statistically significant between-group difference in height growth; (b) the control group experienced numerically greater Height SDS gains than the treatment group; (c) children aged ten and under—the primary target market for the Products—experienced worse growth outcomes on the Product than without it.

104.    Defendant's knowledge is further evidenced by its use of inconsistent growth percentages across different marketing channels. In a November 2023 interview with NutraIngredients, Defendant's co-founder cited "32.63% more growth" when using the Product. Defendant's subsequent removal of the claim from its website following public scrutiny, and its

replacement with a different claim based on another non-significant study finding, further demonstrates Defendant's knowledge that its original representations were false.

105.    Defendant made its false representations with the intent to induce Plaintiff and the Class to purchase the Products. Defendant's growth claims were the central marketing message for the Products and were designed to persuade parents that the Products would help their children grow taller.

106.    Plaintiff and the Class justifiably relied on Defendant's false representations.

107.    As a direct and proximate result of Defendant's fraud, Plaintiff and the Class suffered damages. Plaintiff and the Class paid a price premium based on Defendant's Misrepresentations concerning the quality and characteristics of the Products for Products that Defendant knew did not work as advertised. Had Plaintiff and the Class known the truth—that Defendant's own study showed the Product provided no growth benefit, and that children in the target age group fared worse on the Product than without it—they would not have purchased the Products or would have paid substantially less for them.

108.    Defendant's conduct was willful, wanton, and undertaken with reckless disregard for the rights of Plaintiff and the Class, entitling Plaintiff and the Class to an award of punitive damages in an amount sufficient to punish Defendant and deter similar conduct in the future.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

23

(b) Awarding monetary damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding punitive damages in an amount to be determined at trial;

(f) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: March 24, 2026

FURIA LAW, LLC

By: _____

Philip J. Furia
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel : 646-830-1915
furiap@furiafirm.com

*Counsel for Plaintiff and the Class*